## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROCKHILL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-1380-JES-JEH |
| | ) | |
| CARRI SCHARF MATERIALS | ) | |
| COMPANY, an Illinois corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER AND OPINION</u>

This matter is now before the Court on Plaintiff's Motion [34] for Judgment on the Pleadings. Defendant filed a response [38] and the matter is ripe for disposition. For the reasons set forth below, Plaintiff's Motion is GRANTED.

### BACKGROUND

Plaintiff, Rockhill Insurance Company ("Rockhill"), brought this action against Defendant, Carri Scharf Materials Company ("Scharf"), seeking a declaratory judgment that Rockhill owes no duty to defend or indemnify Scharf under the commercial general liability policies issued to Scharf from September 1, 2014 to September 1, 2018 for the case *People of the State of Illinois v. Carri Scharf Materials Company,* No. 12-CH-320, Circuit Court of Peoria County, Illinois ("Underlying Complaint").

Scharf is a concrete aggregate mineral and mining operation, and the owner of a salt storage facility and barge unloading terminal. D. 38-1, at 3.[1] As part of its operations, Scharf

---

[1] Citations to the Docket in this case are abbreviated as "D.__"

conveys salt over the Illinois River levee from barges and then stockpiles the salt for future sale at a storage facility located in Bartonville, Peoria County, Illinois. *Id.*

The State of Illinois (the "State") filed the Underlying Complaint against Scharf in May 2012, which contained six counts: two counts of surface water pollution; one count for ground water contamination; two counts for failing to obtain necessary permits; and one count for failure to comply with a necessary permit. D. 38-1, at 4-5. It alleged generally that Scharf's conduct caused, threatened, or allowed the discharge of contaminants into the Illinois River, a nearby marsh, a runoff pond, a ditch and storm water resulting in pollution. *Id.* On various dates between 2008 and 2011, the Illinois Environmental Protection Agency ("IEPA") inspected Scharf's storage facility, noting evidence of salt spillage into the river, salt pile runoff, and salt stockpiled and uncovered. *Id.* at 5-8. The IEPA also collected water samples from areas on or surrounding Scharf's property during that same period, with results indicating elevated levels of chloride concentrations and/or cyanide. *Id.* The Underlying Complaint further alleged Scharf did not obtain necessary permits for construction and industrial activities between 2008 and 2011. *Id.* at 7-8.

From September 1, 2014 to September 1, 2018, Rockhill issued four commercial general liability policies ("Rockhill Policies") to Scharf. *Id.* at 10. Subject to all terms, conditions and exclusions described in the policies, the Rockhill Policies provided "bodily injury" liability coverage, "property damage" liability coverage, and "personal injury" or "advertising injury" liability coverage. *Id.* at 11. The parties agree Rockhill owes no obligation to Scharf under the "bodily injury," "personal injury," or "advertising injury" coverages of the Rockhill Policies. *Id.* The parties do not agree as the "property damage" liability coverage. With regards to the

"property damage" provisions of the Rockhill Policies, it provides in part that the insurance coverage applies to "property damage" that "occurs during the policy period." *Id.* at 12.

The Rockhill Policies contain exclusions for coverage, in relevant part, regarding pollution and pre-existing damage or injury. The "TOTAL POLLUTION EXCLUSION ENDORSEMENT" declares the Rockhill Policies do not apply to any "request, demand, order or statutory or regulatory requirement" to the insured to respond to assess the effects of "pollutants." *Id.* at 14. The Rockhill Policies define "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Id.* There is also a provision entitled "EXCLUSION – PRE-EXISTING DAMAGE OR INJURY". *Id.* at 15. It states the insurance coverage does not apply to any property damage that occurred before the effective date of the policy, are alleged to be in the process of occurring as of the effective date, or are in the process of settlement, adjustment, or suit as of the effective date. *Id.*

The Rockhill Policies also contain certain conditions ("Notice Conditions") governing when the insured must notify Rockhill in the event of an occurrence or offense that may result in a claim or suit, or in the event that a claim or suit is filed against the insured. D. 38-1, at 17. The Notice Conditions state an insured must notify Rockhill "as soon as practicable" of any occurrence or offense which may result in a claim. *Id.* The insured must also notify Rockhill in writing "as soon as practicable" of any claim made or suit brought against the insured. *Id.* at 18. The insured must immediately send copies of any demands, notices, summonses, or legal papers to Rockhill. *Id.* Scharf notified Rockhill of the Underlying Complaint on May 21, 2018. *Id.* at 18.

In March 2018, the Office of the Attorney General for the State of Illinois sent a letter to counsel for Scharf and Compass Minerals America, Inc., notifying them of its intent to amend

the Underlying Complaint to include Morton Salt, Inc. ("Morton Salt") and Compass Minerals America, Inc. D. 17-1, at 2. A copy of the letter was also sent to Morton Salt. *Id.* at 3. Morton Salt sent a letter to Scharf on April 23, 2018, demanding defense and indemnification in the State's action. D. 17-2, at 2. Scharf then sent Morton Salt's demand letter to Rockhill on May 21, 2018. D. 38, at 3.

**LEGAL STANDARD**

A judgment on the pleadings may be granted if the pleadings disclose no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Cincinnati Ins. Co. v. Allen*, 347 F. Supp. 2d 586, 589 (C.D. Ill. 2004). In this case, both parties agree on the material facts concerning the language in the Rockhill Policies and the Underlying Complaint. The parties also agree Illinois law should be applied to this case. See D. 35, at 10, and D. 38, at 2-3.

"To determine whether an insurer has a duty to defend its insured, we compare the factual allegations of the underlying complaint … to the language of the insurance policy." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010). If the underlying complaint contains alleged facts within or potentially within the policy's coverage, the insurer's duty to defend arises. *Id.* The duty to defend is broader than the duty to indemnify, and a finding of no duty to defend precludes a finding of no duty to indemnify. *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 693 (7th Cir. 2009).

Notice provisions within insurance policies impose valid prerequisites to coverage. *W. Am. Ins. Co. v. Yorkville Nat. Bank*, 238 Ill. 2d 177, 185 (2010); *Williams v. BNSF Ry. Co.*, 2015 IL App (1st) 121901-B, P37, 29 N.E.3d 1097, 1105. A policy provision requiring notice "as soon as practicable" means notice must be given "within a reasonable time." *Yorkville*, 238 Ill. 2d at 185. The timeliness of the notice given is generally a question of fact, but it may be properly

determined as a matter of law where the material facts are not in dispute. *BNSF*, 29 N.E.3d at 1105.

Under Illinois law, whether an insured's notice to its insurer was timely is determined by the totality of the circumstances. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 811 (7th Cir. 2019). The Supreme Court of Illinois has identified five non-dispositive factors to determine whether notice was timely: "(1) the specific language of the policy's notice provision; (2) the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of an event that may trigger insurance coverage; (4) the insured's diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer." *Landmark*, 933 F.3d at 811, quoting *Yorkville*, 238 Ill. 2d at 185.

## DISCUSSION

Rockhill is seeking a declaratory judgment in its favor based on Scharf's failure to comply with the Notice Conditions of the Rockhill Policies, as well as policy provisions which excluded coverage of claims for pollution and damage that preceded the policy. D. 35, at 2-3. Scharf has admitted the Rockhill Policies contained said Notice Conditions and coverage exclusions, though it denies that it failed to timely notify Rockhill and the relevance of the coverage exclusions. D. 17, at 12-18. Scharf admitted the Underlying Complaint speaks for itself and "alleges what it alleges." *Id.* at 3-9. Scharf does not deny that the Underlying Complaint was filed on May 9, 2012, and it was tendered to Rockhill on May 21, 2018. *Id.* at 3, 9. While the policy provisions that exclude coverage due to pollution and pre-existing damage likely absolve Rockhill from any duty to defend or indemnify Scharf in the Underlying Complaint, the Court finds it only needs to address the alleged breach of the Notice Conditions.

Scharf claims it provided timely notice to Rockhill by sending Morton Salt's demand letter within 30 days of receiving it. Scharf argues "[t]his is not a continuation of an ongoing suit against Rockhill, this is a new suit which is being threatened against the defendant by Morton Salt because of the impending action of the Attorney General of Illinois." D. 38, at 4. To date, Morton Salt has not filed suit against Scharf, nor has the State amended the Underlying Complaint to include Morton Salt as a defendant. D. 35, at 3. The Underlying Complaint remains the only operative pleading for the Court's consideration in whether Rockhill must defend or indemnify Scharf. The Court takes no position on whether Rockhill would have a duty to defend and indemnify Scharf in the event Morton Salt does file suit, as that is not the issue before it.

Applying the five factors outlined by the Illinois Supreme Court, the facts of case can be compared to those in *Landmark*, 933 F.3d at 811-13. The first factor to consider is the specific language of the policy's notice provision. *Id*. at 811. In *Landmark*, the insured did not provide notice to its excess insurer until seven years after the incident, despite a requirement that the insured provide "prompt" notice to the insurer after any event which could trigger the policy's coverage. *Id.* The appellate court stated in dicta that providing notice to the insurer between five and seven years after the occurrence that triggered the policy coverage was not "anywhere close to being either 'prompt' or 'as soon as practicable.'" *Id.* at 812.

If policy language does not identify a specific time frame for when notice must be given, then the insured is required to provide notice "within a reasonable time." *Id.* at 812. Here, the Notice Conditions in the Rockhill Policies require the insured to provide notice to Rockhill "as soon as practicable." Scharf notified Rockhill of the Underlying Complaint some six years after it was filed and only after Morton Salt demanded defense and indemnification. This is far from

what might be considered "as soon as practicable" or "within a reasonable time" to provide timely notice to Rockhill.

Illinois courts also must consider whether the insured is sophisticated in commerce and insurance matters. *Landmark*, 933 F.3d at 811. The insured in *Landmark* blamed its counsel, claiming ineffectiveness, and an erroneous belief that its primary insurer would notify the excess insurer. In the instant case, Scharf has not provided any reason why it waited six years to notify Rockhill of the Underlying Complaint. Scharf was knowledgeable enough to obtain commercial liability coverage and Scharf had counsel from whom it could have sought advisement on whether that coverage applied or whether Rockhill should be notified. It is not clear whether Scharf consulted its counsel on applicable insurance coverage. It is clear, however, that Scharf did not provide even a cursory notice of the pending state action to Rockhill either when the Rockhill Policies were issued or any time before the Morton Salt demand letter in 2018.

Consideration of the third and fourth factors, whether the insured is aware of an event that may trigger insurance coverage and whether the insured was diligent in ascertaining whether policy coverage is available, is hindered by the lack of information about Scharf's actions after the State filed the Underlying Complaint. Scharf has not disclosed if it explored whether the Underlying Complaint may trigger coverage by the Rockhill Policies or whether policy coverage was available in this instance. It is possible Scharf may have consulted counsel and concluded coverage would not be available from Rockhill, thereby giving Scharf no reason to notify Rockhill of the Underlying Complaint.

Finally, courts must consider whether the insurer was prejudiced by the insured's late notice. *Landmark*, 933 F.3d at 813. Rockhill has not claimed it suffered any prejudice by receiving notice of the Underlying Complaint six years after it was filed. Further, Rockhill

argued it would have no duty to defend or indemnify Scharf based on the policy exclusions, regardless of when Scharf provided notice of the Underlying Complaint. Still, it is possible that had Rockhill been notified of the Underlying Complaint within a reasonable time, it may have monitored the progress of the case and been prepared for any third party demands for defense and indemnification, such as the demand by Morton Salt. Instead, Rockhill was blindsided by the Underlying Complaint, learning of it six years after it was filed when Scharf sent the Morton Salt letter to Rockhill. Scharf argued it is being threatened with the potential of a new suit brought by Morton Salt and therefore, it provided proper notice to Rockhill. D. 38, at 4. This argument, however, speaks directly to the type of prejudice Rockhill may suffer if Morton Salt does file a complaint against Scharf and its insurer(s).

The Illinois Supreme Court has said "a lengthy delay in providing notice is not an absolute bar to coverage provided the insured's reason or the delay is justifiable under the circumstances." *Yorkville*, 238 Ill. 2d at 187. However, "at some point common sense comes into play" when considering the totality of the circumstances. *Landmark*, 933 F.3d at 813. Here, Scharf has not provided any reason why it waited six years to notify Rockhill of the Underlying Complaint. Scharf argues it was notifying Rockhill prior to a potential suit by Morton Salt, but Morton Salt has neither filed suit against Scharf and its insurer(s), nor has it been added as a defendant to the Underlying Complaint. The Court takes no position whether Rockhill has a duty to defend and indemnify Scharf from a complaint by Morton Salt, as it is still a hypothetical scenario and not the question before the Court. Scharf breached the Notice Conditions of the Underlying Complaint and Rockhill has no duty to defend or indemnify Scharf in that action.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion [34] is GRANTED. The Clerk is directed to close the case.

Signed on this 5th day of December, 2019.

s/James E. Shadid
James E. Shadid
United States District Judge